# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs September 9, 2003

## WHEATLEY JAMAR GRAHAM, III v. STATE OF TENNESSEE

### Appeal from the Circuit Court for Madison County
### No. C-02-71    Roger Page, Judge

### No. W2002-02305-CCA-R3-PC  - Filed January 12, 2004

The petitioner, Wheatley Graham, appeals the trial court's denial of his petition for post-conviction relief alleging that he was denied the effective assistance of counsel.  The judgment of the post-conviction court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and JOE G. RILEY, JJ., joined.

Benjamin C. Mayo, Jackson, Tennessee, for the appellant, Wheatley Jamar Graham, III.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; and Alfred Earls, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On February 17, 2000, the petitioner was convicted of two counts of attempted first degree murder, three counts of aggravated assault, and possession of a weapon in the commission of a felony.  This court affirmed. See State v. Wheatley Jamar Graham, III, No. W2000-01723-CCA-R3-CD (Tenn. Crim. App., at Jackson, July 6, 2000).

On direct appeal, this court summarized the pertinent facts as follows:
Torrianto Brown[] testified he worked the 7:00 p.m. to 7:00 a.m. shift at the Owens-Corning plant in Jackson, Tennessee, on December 5, 1998.  About 7:00 p.m., Brown saw Craig Rogers arguing with Gene Taylor.  Between 9:00 and 9:30 p.m., Brown, James Carter and Michael Willingham were leaving the plant for their lunch break.  Brown saw Craig and Billy Rogers coming in the plant.  Outside the plant door, Brown saw [the petitioner] standing, and said, "Hello" to him.  Brown had never seen [the petitioner] before that night.  As the three were going to Brown's '85 gray ninety-eight in the parking lot, Brown heard a gunshot from the

plant. Brown saw the Rogers brothers and [the petitioner] get into a white car driven by Craig. Brown stated that Michael Willingham was in the right front passenger's seat and James Carter was in the rear. At the stop sign of the parking lot, Craig flashed his lights and pulled up beside Brown's window. Billy pulled a black Glock-like pistol and shot Brown in the left shoulder. As Brown slumped over, he stated he saw [the petitioner] open the passenger door and shoot Michael Willingham point blank, then [the petitioner] opened the rear door and shot into the back seat.

Brown took off in his car, and was pursued by the white car, which fired some shots at his vehicle. On the by-pass, Brown wrecked his car in the median. Brown described the damage to his car which consisted of three bullet holes in the front window, the back window was shot out, the driver's side window was shot out, and the back driver's side window was shot out.

Michael E. Willingham[] testified that he worked the 7:00 p.m. to 7:00 a.m. shift at the Owens-Corning plant on December 5, 1998. Willingham stated he was with Torrianto Brown and James Carter that night, but after he was shot in the head he could not remember anything about the shooting. Also, the victim was shot in the right elbow and the bullet is still lodged in his head. The victim spent seven (7) weeks in the hospital and received serious injuries that will prevent him from working.

James Carter testified that he was at work on December 5, 1998, at the Owens-Corning plant when he saw Craig and Billy Rogers outside the plant, as he, Torrianto Brown and Michael Willingham were leaving for their lunch break. [The petitioner], whom he had never seen before, was outside the plant door. Craig and Billy went in the plant while [the petitioner] remained outside. Carter got into the rear of Brown's car and Willingham was in the right front seat. As they were leaving the parking lot, Craig and Billy pulled along side of them. Billy put a gun in Brown's face and [the petitioner] got out of the car, opened the front right door and shot Willingham in the head. Then, [the petitioner] opened Carter's door and shot him four times, striking Carter twice in the hip, once in the left thigh, and in the back area. Carter believes that Billy shot him in the left arm. Carter stated they headed for the hospital, with Craig and Billy chasing them and firing additional shots at the car. On the by-pass, Brown drove into a ditch. Carter then ran into the middle of the street trying to get help. The victim spent three days in the hospital and two bullets were removed from his body. It was Carter's understanding that Craig had gotten into an argument with the team leader, "Greg."

Craig Rogers testified that he entered three pleas of guilty to attempted first degree murder and he was serving a fifteen (15) year sentence for each offense concurrently. On December 5, 1998, Craig stated that he had a disagreement with Greg Taylor, a team leader, at Owens-Corning. Prior to his encounter with Taylor,

-2-

Craig had been home consuming about four beers, a pint of Canadian Club whiskey, one and a half quarts of Icehouse beer, and three quarters of a forty-ounce Bud Light beer. His brother, Billy, was at Defendant's home and they drank some more beer when Craig told Billy about his problems with Taylor. They and [the petitioner] got into Craig's white Corsica and went to the plant. Craig and Billy went inside and Craig got into a fight with Taylor. Billy had given Craig a .40 caliber Glock pistol. While going inside, the three victims passed by and [the petitioner] remained outside. Billy and Walter Ross began struggling over the pistol, and it fired. Craig stated that he and Billy left, and he was not paying attention to Defendant, got into his car and flashed his lights at Brown to stop. Craig pulled up beside Brown and was talking to him when Craig heard some shots being fired on Brown's opposite side. After these shots, Billy began firing with the Glock and Craig told him to stop. Craig did not see [the petitioner] get back into his car, nor did he see [the petitioner] with a gun, but he did see [the petitioner] on the passenger's side of Brown's car. Craig stated that he went to his mother's home and [the petitioner] went home. Craig testified that he called the police. Craig stated that Billy gave [the petitioner] a .380 Lorcin chrome pistol while inside the car.

Id., slip op. at 2-3.

At the evidentiary hearing, the petitioner testified that he was initially identified by each of the victims at the preliminary hearing. He claimed that his identification was unduly suggestive because only he and his co-defendants, Billy and Craig Rogers, were in the courtroom and each of the victims knew the Rogers brothers.

Trial counsel testified that it was his opinion that the identification procedure was not unduly suggestive and, in consequence, he did not file a motion to suppress. While acknowledging that none of the victims knew the petitioner, trial counsel recalled that they identified him at the preliminary hearing. Unaware of whether either of the victims had been shown a photograph of the petitioner prior to the preliminary hearing, he explained that he presented an alibi defense through the testimony of a number of individuals who contended that the petitioner was either at his own residence or at the home of a relative during the commission of the crimes.

The post-conviction court denied relief, concluding that "[trial counsel] was fully prepared to proceed to trial" and that "[trial counsel's] conduct certainly met the applicable standard for effective assistance of counsel."

In this appeal, the petitioner asserts that his trial counsel was ineffective for failing to determine from the victims whether the pretrial identification was unduly suggestive. He argues that his trial counsel should have questioned each victim to determine whether they had been shown a photograph of the petitioner before making an in-court identification of the petitioner at the preliminary hearing.

Under our statutory law, the petitioner bears the burden of proving the allegations in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). Evidence is clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from the evidence. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Initially, the petitioner has failed to present any proof that his photograph was, in fact, shown to any of the witnesses as a means of facilitating their identification. Other than the petitioner's bare

claim, nothing in this record indicates that the identification of the petitioner at the preliminary hearing was tainted in any manner.

In Neil v Biggers, the United States Supreme Court established a two-part analysis to assess the validity of a pretrial identification. 409 U.S. 188, 198-99 (1972). First, trial courts must determine whether the procedure used to obtain the identification was unduly suggestive. Id. at 198. A violation of due process has occurred if the identification procedure is so suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Id. If a court finds that the identification procedure was unduly suggestive, the court must determine whether, under the totality of the circumstances, the identification is nevertheless reliable. Id. at 199; State v. Brown, 795 S.W.2d 689, 694 (Tenn. Crim. App. 1990). This standard was adopted by our supreme court in Bennett v. State, 530 S.W.2d 511, 512-15 (Tenn. 1975). A finding that the pre-trial identification was unreliable will also require the exclusion of a subsequent in-court identification by the same witness. State v. Philpott, 882 S.W.2d 394, 400 (Tenn. Crim. App. 1994). Factors to be considered in determining whether a violation of due process has occurred are

(1) the opportunity of the witness to view the criminal at the time of the crime;
(2) the witness' degree of attention at the time of the crime;
(3) the accuracy of the witness' prior description of the criminal;
(4) the level of certainty demonstrated at the confrontation; and
(5) the time elapsed between the crime and the confrontation.

Neil, 409 U.S. at 199; see also Philpott, 882 S.W.2d at 400.

In this case, the evidence established that two of the victims identified the petitioner as one of the perpetrators at both the preliminary hearing and at trial. Before the chase, one of the victims had greeted the petitioner from close range. A second victim had seen the petitioner from a close range as he was shot four times. Further, a co-defendant, Craig Rogers, testified that the petitioner was at the crime scene and was a participant in the shootings. Although the record does not indicate the accuracy of the victims' prior descriptions, the Neil factors favor the admission of the identifications. Thus, no prejudice could have resulted from trial counsel's failure to file a motion to suppress. Finally, the petitioner was unable to establish that either of the victims was shown his photograph prior to the in-court identification. Under these circumstances, the evidence does not preponderate against the post-conviction court's determination that the petitioner received the effective assistance of counsel.

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE